**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Jaime Dion,

Plaintiff,

v.

Bradley Eugene Wright, et al.,

Defendants.

No. CV-21-00441-PHX-SMB

**ORDER**

Pending before the Court is Plaintiff Jaime Dion's Motion for Summary Judgment ("Motion"). (Doc. 57.) Plaintiff also filed a Statement of Facts in Support of her Motion. (Doc. 58.) Defendants Pinnacle West Capital Corporation Supplemental Excess Benefit Retirement Plan, Pinnacle West Administrative Committee, and Pinnacle West Capital Corporation (collectively the "Pinnacle West Defendants") filed a Response in which they took no position on Plaintiff's Motion. (Doc. 62.) Defendant Bradley Wright filed a Response to Plaintiff's Motion, (Doc. 66), and filed a Controverting Statement of Facts in support of the Response, (Doc. 67). Plaintiff replied. (Doc. 71.) The Court heard oral argument on the Motion on February 25, 2022. The Court has considered the briefing, evidence, and relevant law and will now dismiss the case.

## I. BACKGROUND

Mr. Wright and Ms. Dion were married in 2001 and divorced in 2021. (Doc. 58 ¶ 1.) Maricopa County Superior Court issued a final divorce decree for the couple on July 16, 2021. *In re the Matter of Jaime Dion Wright and Bradley Eugene Wright*, Case No.

FC 2018-006203 (the "Dissolution Decree"). (*Id.*) Mr. Wright was employed by SunCor Development Company ("SunCor"), a former subsidiary of Pinnacle West Capital Corporation, from 1999 to 2010. (*Id.* ¶ 2.) During his time working for SunCor, Mr. Wright became vested in a "Pinnacle West Capital Corporation Supplemental Excess Benefit Retirement Plan" (the "Plan"). (*Id.* ¶ 3.) The Plan allowed a married participant to make an election to receive five-year certain payments in place of a lifetime annuity, but only with the signed consent of the participant's spouse. (*Id.* ¶ 4.)

At a certain point, to modify the benefit under the Plan, Mr. Wright submitted two documents to the Plan that purported to bear Ms. Dion's signature. (*Id.* ¶ 5.) The forms were (1) the "Spouse's Consent to Designation of Other Beneficiary," and (2) the "Spouse's Consent to Payment Form." (*Id.* ¶ 6.) The effect of these documents were (1) to change the payout from a lifetime annuity starting when Mr. Wright turned 65 to a five-year payout starting when Mr. Wright turned 55, and (2) to waive Ms. Dion's rights to her survivor benefits. (*Id.* ¶ 7.) The documents would have no effect without Ms. Dion's signature. (*Id.* ¶ 4.) Ms. Dion contends that she never signed the contested documents. (Doc. 57 at 7.) Her handwriting expert concluded that the disputed signatures on the documents are inconsistent with Ms. Dion's signatures. (Doc. 58 ¶¶ 15, 16.)

In the Dissolution Decree issued by Maricopa County Superior Court on July 16, 2021, after weighing the evidence, the court found that "based on evidence presented, that [Ms. Dion] did not sign the Waiver." (Doc. 57-2 at 16.) The court went on to state:

> The Court qualifies this finding as limited to being "as between Husband and Wife," because Pinnacle West/Suncor is not a party to this divorce proceeding, the finding might not be binding on Pinnacle West/Suncor, and the finding, therefore, might not resolve the current pending federal court litigation concerning the form of the SEBRP benefit.
>
> Because the federal court case has not been resolved, it would not be appropriate for this Court to enter any orders concerning the form of benefit it must divide. This Court therefore defers to the federal court, will not enter any such order concerning the form of benefit at this time, and reserves jurisdiction to do so after the federal court rules.

(*Id.*) The Pinnacle West Defendants stated—both in their Response to Ms. Dion's Motion and at oral argument—that the company intends to comply with any judgment to divide the Plan assets, whether a qualified domestic relations order ("QDRO") from Maricopa County Superior Court or an order from this Court. (*See* Doc. 62 at 2.)

The Court notes that Ms. Dion filed this case on March 15, 2021, only four months before Maricopa County Superior Court issued the Dissolution Decree. (Doc. 1.) Ms. Dion's counsel stated at oral argument that the federal case was necessary because the Pinnacle West Defendants were not a party to the state court proceedings, and thus would not be bound by a judgment.

## II. DISCUSSION

The parties' pleadings raise three issues: whether there are any material facts in dispute that would preclude summary judgment; whether collateral estoppel applies; and whether this Court should decline jurisdiction. Because this case is duplicative of the parallel state court proceeding, the Court will first examine whether to exercise jurisdiction over this declaratory judgment action. Ms. Dion argues that it would be an error for this Court to decline jurisdiction. (Doc. 71 at 11.) Mr. Wright argues that this case is unnecessary and that the issue should be handled by the state court. (Doc. 66 at 1, 9.)

"Congress has expressly provided ERISA beneficiaries with the choice between a state or federal forum in their actions to recover benefits." *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1253 (9th Cir. 1987). The Ninth Circuit has long held that "a district judge has discretion to decline jurisdiction in favor of pending state court litigation when a party seeks to use the Declaratory Judgment Act to deprive a plaintiff of his choice of forum or to encourage a race to judgment. *Id.* The questions for a district court presented with a suit under the Declaratory Judgment Act is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)). A district court should also

consider "whether the declaratory action will settle all aspects of the controversy" or "whether the use of a declaratory action will result in entanglement between the federal and state court systems." *Supermicro Computer, Inc. v. Digitechnic, S.A.*, 145 F. Supp. 2d 1147, 1150 (N.D. Cal. 2001) (quoting *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n. 5 (9th Cir. 1998)). "Ordinarily, it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366 (9th Cir. 1991) (quoting *Brillhart*, 316 U.S. at 495. "Thus, when a party requests declaratory relief in federal court and a suit is pending in state court presenting the same state law issue, there exists a presumption that the entire suit should be heard in state court." *Id.* at 1366–67. The mere pendency of a state court action, however, does not require a district court to refuse declaratory relief in federal court. *Id.* at 1167. When faced with such a situation, the Supreme Court has counseled district courts to:

> [A]scertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

*Id.* (quoting *Brillhart*, 316 U.S. at 495). "A district court, therefore, when deciding whether to exercise its jurisdiction under the Declaratory Judgment Act, must balance concerns of judicial administration, comity, and fairness to litigants." *Id.*

"[T]o guide their discretion in declaratory judgment cases, [c]ourts look at the factors set forth in *Brillhart*." *Gerdes v. GEICO Indem. Co.*, No. CV-10-2165-PHX-GMS, 2011 WL 649046, at *1 (D. Ariz. Feb. 11, 2011). Under those factors, a district court should (1) "avoid needless determination of state law issues;" (2) "should discourage litigants from filing declaratory actions as a means of forum shopping;" and (3) "should

avoid duplicative litigation." *Dizol*, 133 F.3d at 1225 (citing *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371–73 (9th Cir. 1991) (overruled on other grounds by *Dizol*).

Here, the Court will decline to exercise jurisdiction because the state court is better positioned to decide the entire dispute between the parties. Because a decision of whether Ms. Dion signed the documents to amend the Plan is intertwined with the divorce proceedings, a determination here would not settle all aspects of the controversy. *See Supermicro Computer, Inc., S.A.*, 145 F. Supp. 2d at 1150. The state court is obviously in a better position to decide the entire dispute. In fact, it already has, (Doc. 57-2 at 16), and it simply deferred judgment on the matter because of the pendency of this action. The state court retained jurisdiction to enter an order on the form of benefits after this case is decided. (*Id.*)

The *Brillhart* factors counsel this Court to decline to exercise jurisdiction. First, this Court should not needlessly determine state law issues when the state court is in a position to do so, and in fact, has already done so. Second, a ruling on this matter would encourage litigants to file declaratory judgment actions during the pendency of state court proceedings if they prefer a federal forum or do not favor a state court judge. Third, as evidenced by the order of the state court judge, this litigation is duplicative. This Court would be deciding the exact same issue that the state court already examined and ruled upon.

Yet Ms. Dion argues that Mr. Wright's request that the Court decline to exercise jurisdiction is essentially a request to dismiss the suit. This, Ms. Dion argues, is procedurally improper. (Doc. 71 at 11); *see Carolina v. JPMorgan Chase Bank NA*, No. CV-19-05882-PHX-DWL, 2021 WL 5396066, at *9 (D. Ariz. Nov. 17, 2021) (finding that plaintiff's request for an adverse inference made for the first time in a response to a motion for summary judgment procedurally improper under Rule 7(b)(1)). However, Mr. Wright merely highlights a federal court's preexisting duty to examine its own jurisdiction. *See U.S. v. Hays*, 515 U.S. 737, 742 (1995) ("The federal courts are under an independent obligation to examine their own jurisdiction."); *see also Hernandez v. Campbell*, 204 F.3d

861, 865 (9th Cir. 2000) ("Federal courts are always under an independent obligation to examine their own jurisdiction.") (internal quotation marks omitted). Therefore, Ms. Dion's argument on this point does not stop this Court from considering whether to decline jurisdiction.

Ms. Dion also argues that the Court cannot exercise its discretion to decline to exercise jurisdiction unless the state court has jurisdiction over all the parties. (Doc. 71 at 12.) Because the Pinnacle West Defendants are not a party to the state court proceedings, Ms. Dion argues that this action is necessary to bind them. (*Id.*) However, even though the Pinnacle West Defendants are not parties to the state court action, they have avowed both in their Response and at oral argument that they would follow and implement a QDRO with respect to the assets in the Plan. (Doc. 62 at 2.) In fact, the Pinnacle West Defendants stated that they routinely do so. The Pinnacle West Defendants also recognized that they could have been joined in the state court proceedings and stated that they have been included in state court proceedings in other cases. The Pinnacle West Defendants are amendable to service in state court. Furthermore, Ms. Dion and Mr. Wright were both parties in the state court divorce proceedings and had the opportunity to litigate the issue now before this Court. Therefore, the fact that the Pinnacle West Defendants are not parties to the state court action is of no consequence in this instance.[1]

Therefore, the Court will refuse to exercise jurisdiction of this matter and will defer to the state court's ruling on the matter.

///

///

///

///

---

[1] Furthermore, if the Court were to proceed on the substance of the Motion, the case may result in a factual finding that is inconsistent with that of the state court. Specifically, the Court would find that there are disputed facts as to whether Ms. Dion signed the contested documents and issue preclusion does not apply. As a result, the matter could proceed to trial where a factual finding regarding the signatures could contradict the finding already made by the state court.

**III. CONCLUSION**

Accordingly,

**IT IS ORDERED** dismissing this case with prejudice.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Summary Judgment (Doc. 57.) is deemed moot.

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this case.

Dated this 9th day of March, 2022.

Honorable Susan M. Brnovich
United States District Judge